UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MEGAN FEURIG,

        Plaintiff,

-vs-                               Case No.  2:14-cv-321-FtM-DNF

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

## OPINION AND ORDER

Plaintiff, Megan Feurig, seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for Disability and Disability Insurance Benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, it is respectfully recommended that the decision of the Commissioner be **REVERSED AND REMANDED**, pursuant to § 205(g) of the Social Security Act, 42 U.S.C § 405(g).

**I.  Social Security Act Eligibility, Procedural History, Standard of Review, and ALJ's Findings**

The law defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must

be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d) (2); 20 C.F.R. §§ 404.1505-404.1511.

### A.     Procedural History

On February 5, 2010, Plaintiff filed an application for a period of disability and Disability Insurance Benefits, alleging a disability onset date of September 1, 2001. (Tr. 103).  Plaintiff's request for benefits was denied on October 13, 2010, and upon reconsideration on February 8, 2011. (Tr. 94).  An administrative hearing was held before Administrative Law Judge M. Dwight Evans (the "ALJ") on April 2, 2012. (Tr. 26-58).   On January 10, 2013, the ALJ rendered his decision, in which he determined that Plaintiff has not been under a disability as defined by the Social Security Act. (Tr. 21).  Plaintiff's Request for Review was denied by the Appeals Council on May 12, 2014. (Tr. 1-4).

### B.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision

applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs*., 21 F.3d 1064, 1066 (11th Cir. 1994).   The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Sbpt. P. App. 1. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. §

-3-

1520(a)(4)(iv), 20 C.F.R. § 1520(f) . If the claimant can still perform her past relevant work, then she will not be found disabled. *Id.*

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id.* In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to Claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

C.     **The ALJ's Findings**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since her alleged onset date. (Tr. 16). At step two, the ALJ determined that Plaintiff has the following severe impairments: bipolar disorder, attention-deficit hyperactivity disorder (ADHD) and cognitive disorder in math and written expression. (Tr. 16). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in "20 CFR Part 404, Subpart P, Appendix 1." (Tr. 17).

Before proceeding to step four, the ALJ considered Plaintiff's entire medical record and found that Plaintiff has the residual functional capacity ("RFC")

> to perform medium work as defined in 20 CFR 404.1567(c) except the work must be limited to simple and routine instructions or tasks in a low stress work environment.  Further, any changes to the workplace environment or routine must infrequent and gradually introduced.

(Tr. 19).  Based on this RFC, the ALJ found at step four that Plaintiff is capable of performing past relevant work as a bagger or cleaner. (Tr. 21).  As the ALJ found that Plaintiff could return to her past relevant work, he did not proceed to step five.  The ALJ concluded that Plaintiff has not been under a disability as defined in the Social Security Act. (Tr. 21).

## II.     Analysis

Plaintiff presents three issues on appeal: (1) whether the ALJ erred by finding that Plaintiff has past relevant work; (2) whether the ALJ erred in his finding that Plaintiff had a high school education and improperly utilized this finding in determining that Plaintiff did not have greater limitations; and (3) whether the ALJ erred in the weight he accorded to the opinions of non-examining state agency consultants and whether the ALJ's RFC finding was supported by substantial evidence.  The Court addresses each issue in turn.

### A.  Whether the ALJ erred by finding that Plaintiff has past relevant work.

Plaintiff argues that the ALJ erred by finding that she had past relevant work as a bagger and cleaner. (Doc. 14 p. 17).  According to Plaintiff, the only year her earnings were close to the threshold substantial gainful activity amount was in 2009, when she was working at Goodwill hanging clothing and at Winn Dixie as a bagger and shopping cart pusher. (Doc. 14 p. 18).  While Plaintiff acknowledges that her work from these jobs exceeds the threshold amount for 2009, she argues that separately, her earnings from each job did not exceed the threshold amount. (Doc. 14 p. 18).  Thus, Plaintiff contends, neither of these jobs can constitute past relevant work. (Doc. 14

p. 18).  In addition, Plaintiff argues that her work with Goodwill and Winn Dixie was subsidized by her employers and should not count toward earnings when determining whether such work is at the substantial gainful activity level. (Doc. 14 p. 18).

Defendant, while acknowledging that Plaintiff's earnings as a cleaner do not appear to exceed the applicable earnings guidelines for determining substantial gainful activity, argues that the ALJ did not err in finding that Plaintiff previous work as a bagger constituted substantial gainful activity. (Doc. 17 p. 5).  Specifically, Defendant argues that in 2006, Plaintiff's earnings from Winn Dixie exceeded the threshold amount set by the earnings guidelines to constitute substantial gainful activity. (Doc. 17 p. 6).

It is the claimant's burden to prove that she is unable to perform her previous work. *Barnes v. Sullivan*, 932 F.3d 1356, 1359 (11th Cir. 1991) (citing *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990); *Cannon v. Bowen*, 858 F.2d 1541, 1544 (11th Cir. 1988); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986)).  "Past relevant work is work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [a claimant] to learn to do it." 20 C.F.R. § 416.960(b)(1).  To constitute "substantial gainful activity," the work activity must be both substantial and gainful. 20 C.F.R. § 404.1572.  Work activity is "substantial" if it "involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a).  Work activity is "gainful" if a claimant performs the activity for pay or profit.  20 C.F.R. § 404.1572(b).

Earnings above a certain dollar threshold level create a presumption of substantial gainful activity, but this presumption is rebuttable. *Johnson v. Sullivan*, 929 F.2d 596, 598 (11th Cir. 1991).  Generally, if a claimant has worked for substantial earnings, then it will be found that the claimant is able to do substantial gainful activity. 20 C.F.R §§ 404.1574(a)(1), 416.974(a)(1).  The regulations set the threshold amount for earnings to constitute substantial gainful activity. *See* 20

C.F.R. § 404.1574(b)(2).  If the claimant's earnings are less than the amount necessary to establish a presumption of substantial gainful activity, the Commissioner "will generally consider . . . that [the claimant has] not engaged in substantial gainful activity." 20 C.F.R. §§ 404.1574(b)(3)(i) and 416.974(b)(3)(i).  Although earnings below the threshold amount ordinarily show that an employee has not engaged in substantial gainful activity, the fact that earnings are below the guidelines is not dispositive. *Cook v. Astrue*, 2012 WL 4356261, at *4 (M.D. Fla. 2012) (citing *Pickner v. Sullivan*, 985 F.2d 401, 403 (8th Cir. 1993)).

Plaintiff does not challenge that her previous work as a bagger and a cleaner involved significant physical or mental activities and was performed for profit.  Instead, Plaintiff's argument is premised solely on her claim that her work as a bagger and cleaner were not performed at the threshold level to constitute significant earnings as needed for substantial gainful activity.  As to the ALJ's finding that Plaintiff has past relevant work as a cleaner, this finding was erroneous.  As Defendant acknowledges, Plaintiff's earnings as a cleaner do not exceed the applicable earning guideline for determining substantial gainful activity. (Doc. 17 p. 4).  This error may be harmless however, if the ALJ's finding that Plaintiff's work as a bagger constitute substantial gainful activity. *See Mitchell v. Astrue*, 2010 WL 3749201, at *8 (N.D. Ga. Sept. 20, 2010) ("[E]ven if the ALJ erred in concluding that Plaintiff's sales clerk and general office clerk jobs were not past relevant work, the error was harmless because Plaintiff's [other] clerk position . . . constituted past relevant work").

"[A]n employee whose average monthly earnings . . . exceed the Earnings Guidelines will ordinarily be found engaged in SGA." Social Security Ruling (SSR) 83-35.  When comparing a claimant's average monthly income to the earnings guidelines, the claimant's income must be

"averaged over the actual period of work." *Id.* In 2006, the threshold amount for earnings to constitute substantial gainful activity was $860 per month. Program Operations Manual System (POMS) DI 25001.001(B)(84).

Here, Plaintiff's record indicates that from January through February 2006 she earned $1,738.34 while working as a bagger at Winn Dixie.[1] (Tr. 246). Plaintiff's monthly average earnings through this two month period was $869.17, exceeding the $860 per month threshold by $9.60. As Plaintiff's work as a bagger was performed above the threshold level, this work presumptively constitutes SGA. *See Johnson*, 929 F.2d at 598.

The presumption of substantial gainful activity, however, can be rebutted by evidence of the nature of the applicant's work, the conditions of employment, and the adequacy of the applicant's performance. *Henn v. Commissioner of Social Security*, 2012 WL 2814011, at *13 (M.D. Fla. June 14, 2012) (citing 20 C.F.R. § 404.1573). Where a claimant's work is subsidized, the amount of the subsidy must be determined and subtracted from the reported monthly earnings before a comparison to the earning guidelines can be made. *See* SSR 83-33. There is a strong indication that work is subsidized where (1) the employment is "sheltered;" (2) childhood disability is involved; (3) mental impairment is involved; (4) there appears to be a marked discrepancy between the amount of pay and the value of the services; (5) the employer, employee, or other interested party alleges that the employee does not fully earn his or her pay (e.g., the employee receives unusual help from others in doing the work); (6) the nature and severity of the impairment indicate that the employee receives usual help from others in doing the work; or (7) the employee is involved in a government-sponsored job training and an employment program.

---

[1] While Plaintiff's pay stub from Winn Dixie lists her job title as Customer Service Associate, Plaintiff characterized her job as "bagger" (Tr. 135) and acknowledged that she worked as a bagger during this time period in her Response to Defendant's Memorandum. (Doc. 20 p. 3).

SSR 83-33.  "In most instances, the amount of a subsidy can be ascertained by comparing the time, energy, skills, and responsibility involved in the individual's services with the same elements involved in the performance of the same or similar work by unimpaired individuals in the community and estimating the proportionate value of the individual's services according to the prevailing pay scale for such work."  Id.  However, "[w]hen precise monetary evaluation is not feasible, it may be possible to determine the approximate extent of a subsidy on the basis of gross indications of a lack of productivity; for example, when unusual supervision or assistance is required in the performance of simple tasks, or the employee is extremely slow, inefficient or otherwise unproductive."  Id.

In this case, while Plaintiff's monthly average earnings as a bagger for January and February 2006 is greater than the applicable threshold amount, evidence in the record indicates that her work was subsidized to an extent that her countable earnings fall below the threshold amount.  As Plaintiff notes, her work as a bagger at Winn Dixie was part of Lee County School District's Graduation Training Plan to obtain a special high school diploma. (Tr. 215, 264, 278-79).  Before January 2006, Plaintiff worked below the earnings guidelines. (Tr. 277, 224-34).  Plaintiff's hours at Winn Dixie were increased in January 2006, as a condition to obtain her high school diploma. (Tr. 264).  After January 2006, Plaintiff never had earnings above the guidelines at Winn Dixie again, not even in February 2006. (Tr. 247-48, 250).  Plaintiff's mother testified at the administrative hearing that Plaintiff was hired by Winn Dixie as a "kind of favor" and that Plaintiff's supervisor worked with Plaintiff's parents in training her. (Tr. 47).  Plaintiff received additional supervision from a school district employee at her work site two times a semester. (Tr. 215).

In his opinion, the ALJ provides no explanation for his finding that Plaintiff has past relevant work as a bagger. (Tr. 21).  In light of the evidence of record suggesting that Plaintiff's work as a bagger was subsidized to an extent to diminish her countable earnings below the threshold amount, the Court finds the ALJ's determination that Plaintiff has past relevant work as a bagger is not supported by substantial evidence.  The Court will remand this case for further development on this issue.

> **B. Whether the ALJ erred in his finding that Plaintiff had a high school education and improperly utilized this finding in determining that Plaintiff did not have greater limitations.**

Plaintiff argues that the ALJ erred in his consideration of the fact that Plaintiff graduated from high school in finding that she did not meet a listing, did not have substantial mental dysfunction, and was not credible and did not have limitations any greater than included in the ALJ's RFC. (Doc. 14 p. 19).  Plaintiff contends that while the ALJ mentioned Plaintiff's learning disability, he did not acknowledge that despite her special education, she did not advance academically and that her disability required that she be given accommodations to help her earn a "special diploma" by working part-time at Winn Dixie and training to be a dog groomer. (Doc. 14 p. 19).  Defendant responds that "high school education" adequately describes special diplomas and that substantial evidence supports the ALJ's evaluation of Plaintiff's education. (Doc. 17 p. 7).

In his opinion, while explaining his finding that Plaintiff has moderate difficulties in concentration, persistence, or pace, the ALJ stated: "I also recognize [Plaintiff's] less than stellar school achievement, but the claimant [sic] ultimate graduation and on-going part-time employment belies the notion of substantial mental dysfunction." (Tr. 18).  The Court finds no error in the ALJ's treatment of Plaintiff's high school education.  The ALJ specifically acknowledged that

Plaintiff had a learning disability (Tr. 17) and determined that she had the severe impairment of cognitive disorder in math and written expression. (Tr. 16). Thus, the ALJ did not rely on the fact that Plaintiff graduated high school to find that Plaintiff had no cognitive disorder, but rather to find that her difficulties in maintaining concentration, persistence, or pace. Accordingly, the Court will not remand on this issue.

### C. Whether the ALJ erred in the weight he accorded to the opinions of non-examining state agency consultants and whether the ALJ's RFC was supported by substantial evidence.

Plaintiff argues that the ALJ erred in his RFC finding by adopting the opinions of state agency consultants who never examined Plaintiff, rendered their opinion prior to the submission of a significant amount of objective medical evidence, and whose opinions are contrary to the objective medical evidence and the opinions of every specialist who examined or treated Plaintiff. (Doc. 14 p. 20). Specifically, Plaintiff takes issue with the ALJ's decision to accord great weight to the opinions of nonexamining state agency consultants Dr. Barry Morris and Dr. Angeles Alvarez-Mullin in order to find that Plaintiff's only mental limitation was that she required simple and routine tasks in a low stress environment with infrequent changes to the work environment. (Doc. 14 p. 21). Plaintiff contends that the ALJ failed to mention any of the objective medical evidence supporting the opinions of her treating physicians, Dr. Rieche, Dr. Feuerstein, and Dr. Garzetta's opinions. (Doc. 14 p. 22). Defendant responds that substantial evidence supports the ALJ's decision to give great weight to the opinions of Dr. Angeles Alvarez-Mullin and Dr. Barry Morris. (Doc. 17 p. 9).

The evidence of record demonstrates that Dr. Alvarez-Mullin reviewed Plaintiff's record in October 2010. (Tr. 595). He opined that Plaintiff could carry out simple instructions, complete simple and routine tasks within a schedule, maintain work routine after learning her job, and

complete a regular work schedule. (Tr. 593). Dr. Alvarez-Mullin further found that Plaintiff had adequate interpersonal skills for low demand work and may or may not need allowances while adjusting to work routine changes. (Tr. 593). Dr. Alvarez-Mullin further found that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, respond appropriately to changes in the work setting, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others. (Tr. 591-92). In February 2011, Dr. Barry Morris, psychologist, reviewed the evidence and agreed completely with Dr. Alvarez-Mullin's findings. (Tr. 623-25).

In his opinion, the ALJ specified that he "relied heavily upon the state agency conclusions of Drs. Morris and Alvarez-Mullin in crafting the claimant's residual functional capacity (RFC), translating their opinions of mild to moderate difficulties into appropriate mental limitations for the claimant" (Tr. 19-20) (citation and footnote omitted). The ALJ explained that his decision was based on the fact that "the state agency opinions mirror the reliable portions of the longitudinal record, including her daily adaptive functioning." (Tr. 20). Further, the ALJ explained,

> the longitudinal record compels great weight toward and implementation of the mild to moderate limitations from the state agency reviewers, which present the most independent and credible snapshot of the claimant's true condition. In turn, the evidence dictates rejection of those portions of the reports of Drs. Rieche, Feuerstein and Garzetta, to the extent they run contrary to the crafted RFC and even their own underlying clinical exam findings. By no means will the reliable evidence support Dr. Rieche's sudden declaration of an "overwhelmed" claimant and numerous "marked" limitations, an opinion refuted by two years of treatment.

(Tr. 20-21).

State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if evidence supports their opinions. *See* 20 C.F.R. § 416.927(e)(2)(i). In this case, the Court finds that the ALJ

committed no error in his decision to accord great weight to the opinions of state agency reviewers Drs. Alvarez-Mullin and Morris as the evidence supports their opinions.  As Defendant notes, the record indicates that Plaintiff's mental status examinations were generally normal.  For example, in February 2010, Dr. Omar Rieche observed that Plaintiff was well-dressed, alert and oriented. (Tr. 585).  In addition, Dr. Rieche found that Plaintiff's affect was full-range and appropriate, mood was pleasant, behavior was cooperative and appropriate, thought process was logical and goal-directed; thought content was appropriate; insight, judgment, and reliability were fair; recent and remote memory were intact; speech was normal in volume, tone, rate, and clarity; and physical observations were normal. (Tr. 585).  At that time he assigned Plaintiff a Global Assessment of Functioning (GAF) of 100 (Tr. 585), indicating that she had no symptoms and superior functioning in a wide range of activities.

In June 2010 he reported generally normal findings and assigned Plaintiff a GAF of 70, indicating that she had only mild symptoms or some difficulties and was generally functioning pretty well. (Tr. 583).  Follow-up examinations in October and December indicated that Plaintiff had only moderate symptoms or difficulties. (Tr. 619, 621).  In February 2011, Dr. Rieche assigned Plaintiff a GAF of 65, indicating that the only had mild symptoms and some difficulties, but was generally functioning pretty well. (Tr. 645).  Dr. Rieche's repeated, consistent, and generally normal mental status findings support the ALJ's decision to give great weight to Dr. Alvarez-Mullin's and Dr. Morris' opinions.

Plaintiff contends that the ALJ erred in rejecting the assessments of mental function that Dr. Rieche performed in September 2010 and March 2012 regarding her disability application. Dr. Rieche stated in the September 2010 assessment that Plaintiff was impulsive and could work only for 3 to 4 hours per day, 2 days per week. (Tr. 590).  Dr. Rieche also opined in his March

2012 assessment that Plaintiff had numerous "marked" impairments in social interaction, sustained concentration and pace, and adaptation. (Tr. 656-63).

An ALJ may decline to give controlling weight to a treating source's opinion when it is not supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2).  The opinion of a treating physician must be given substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).   Good cause exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.* at 1241.

Here, as the ALJ noted in his opinion, the evidence does not support Dr. Rieche's finding that Plaintiff possessed numerous "marked" limitations. (Tr. 21).   Dr. Rieche's observations throughout 2010 and 2011 demonstrate that Plaintiff's mental functioning was intact, contrasting significantly with his assessments from September 2010 and March 2012.  For example, while Dr. Rieche repeatedly stated that Plaintiff's thought process was logical and goal-directed (Tr. 583, 585, 619, 621, 645), Dr. Rieche described Plaintiff's thought process as tangential, obsessive, and slow in his September 2010 assessment.  Likewise, Dr. Rieche repeatedly stated that Plaintiff's thought was appropriate (Tr. 583, 585, 619, 621, 645), but described it as easily irrational and delusional in September 2010. (Tr. 589).  Again, while Dr. Rieche reported that Plaintiff behaved appropriately, was well dressed, alert, and oriented (Tr. 583, 585, 619, 645), he described her as disheveled and having poor eye contact.  (Tr. 589).  Finally, while Dr. Rieche repeatedly assigned Plaintiff GAF scores between 65 and 100 indicating that her symptoms or difficulties were either moderate, mild, or non-existent (Tr. 583, 585 619, 621, 645), he assessed numerous "marked"

limitations in his March 2012 assessment. (Tr. 656-63). Given the inconsistencies between his opinion and own record findings, the Court finds that the ALJ had good cause to reject the portion of Dr. Rieche's opinions to the extent they controverted by the ALJ's RFC finding.

The opinions of Dr. Peter J. Feuerstein, a psychologist, likewise support the ALJ's decision. Dr. Feuerstein examined Plaintiff in June 2011 (Tr. 647). At that time he assigned Plaintiff a GAF score of 65 (Tr. 653), indicating she had only mild symptoms or some difficulties and was generally functioning well. Dr. Feuerstein acknowledged that Plaintiff had been observed to break rules, like, make irresponsible choices, and to have difficultly managing her finances. (Tr. 652), but noted that Plaintiff may do well if supported by a patient supervisor and given a good deal of on-the-job training or even job coaching. (Tr. 654). This opinion supports the ALJ's decision that Plaintiff could perform simple, routine instructions, a low stress work environment, and only infrequent or gradually-introduced changes to the workplace environment or routine. (Tr. 19).

Dr. Emanuel Falcone's examination showed no significant abnormalities, further supporting the ALJ's decision. Dr. Falcone examined Plaintiff in September 2005 after she argued with her parents about her boyfriend and attempted suicide with Aspirin (Tr. 525), he also observed plaintiff's attention span was adequate, impulse control grooming and hygiene were good, affect was full and appropriate, mood was euthymic, speech was mildly dysarthric but entirely understandable and otherwise normal, thinking was linear, coherent and logical, judgment was fair, insight was limited, and memory was intact. (Tr. 526). Dr. Falcone assessed Plaintiff with a GAF of 45, indicating serious symptoms or difficulties, but the next day she received a GAF of 55 and was discharged (Tr. 528).

Finally, the psychological evaluation performed by Louis P. Garzetta, clinical psychologist, further supports the decision of the ALJ. Dr. Garzetta found that Plaintiff's personality seemed characterized by fragmented thinking, impulsive actions, emotional immaturity and poor judgment. (Tr. 536). Dr. Garzetta noted that Plaintiff's nonverbal abilities are within the average range while her verbal skills are within the borderline range. (Tr. 536). In addition, Dr. Garzetta noted that Plaintiff had weakness in perceptual motor functioning, memory, and the understanding of subtle forms of interpersonal communication. (Tr. 536). Nevertheless, instead of finding Plaintiff disabled, Dr. Garzetta opined that Plaintiff was "appropriately placed in her school program and vocational pursuits." (Tr. 536).

## III.    Conclusion

For the reasons explained above, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2015.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE